**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **DAWNDA DURBIN,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | **Civil Action No. 3:14-cv-01132-L** |
| **KENNEDY INTERNATIONAL, INC.,** | § | |
| | § | |
| **Defendant.** | § | |
| | § | |
| | § | |
| | § | |

## PLAINTIFF'S THIRD AMENED PETITION

PLAINTIFF Dawnda Durbin files this Third Amended Petition and states the following:

### I.   NATURE OF THE ACTION

1.     This is a personal injury lawsuit involving claims based upon negligence, products liability, breach of warranty, and the Texas Deceptive Trade Practices Act. Plaintiff was injured after she fell off a stool that was imported from China and sold by Defendant Kennedy International ("Kennedy").  Over a year before the incident occurred, Kennedy was aware of the defects in the stool (including "bad plastics") because Kennedy had the stool tested at an independent laboratory.  Instead of recalling the stool at that time (March 2011), Kennedy waited until May, 2012, to institute a formal recall of its defective product.

### II.  VENUE AND JURISDICTION

2.     This case was originally filed in Dallas State District Court, but removed by Defendant based upon diversity jurisdiction.  Plaintiff does not contest the jurisdiction of

the Court.  There is diversity between the parties as Plaintiff is a resident of Texas and Defendant is a New Jersey Corporation.  Furthermore, the amount in controversy exceeds $75,000.00.

## II.  PARTIES

3.       Plaintiff Dawnda Durbin is an individual residing in Dallas County, Texas.

4.       Defendant Kennedy International, Inc. is a New Jersey Corporation, and was served with process in the State Court case, and has submitted to the jurisdiction of this Court.

## IV.  FACTS

5.       On June 30, 2012, Ms. Durbin was in her home in Mesquite, Dallas County, Texas, using a step stool that was imported and sold by Kennedy International, Inc. Plaintiff stood on the stool to reach a cabinet when the stool broke causing her to fall to the floor.  Plaintiff had purchased the stool from a Marshalls Department Store in Texas.

6.       The stool was imported to the United States by Kennedy from a Chinese exporter, East Future International Trading Co. ("East Future").  It was actually manufactured in China by Ningbo Tianqui Plastic Factory ("Ningbo").

7.       By at least March 9, 2011, Kennedy was aware that its imported stools were defective and could break because of a "bad batch of plastics." On that date, Kennedy received a letter from Princeton Polymer Labs, Inc. specifying some of the defects in its stools. (See Ex. A)  Kennedy had specifically contacted Princeton to test its stools for defects.

8.       On November 11, 2011, Kennedy prepared a "To Who It May Concern" letter in which Kennedy outlined some of the specific defects with the stools.  (Ex. B)

9.      On or about May 10, 2012, Defendant, under the auspices of the United States Consumer Products Safety Commission ("USCPSC") issued a "recall notice" for the very same stool Plaintiff had used.

10.     Prior to the actual recall date, Kennedy filed certain "Section 15 Reports" with the USCPSC indicating that the stool was defective due to "bad plastics" and certain design defects.  (*See* Ex. C).

11.     In addition, Kennedy has stated to the USCPSC that it is aware of at least sixty-four (64) incidents of failure and seven (7) injuries that have occurred through April 13, 2013.  (Ex. D)

12.     The particular stool that Plaintiff was standing on failed for various reasons, including:

> A.      <u>Material Defects:</u>   The plastic used in Plaintiff's stool was weak and brittle.

> B.      <u>Molding/Manufacturing Defects:</u>   Because defective manufacture of the stool, the plastic contained voids (holes) in the plastic which further weakened the plastic.

> C.      <u>Design Defects</u>:   The stool's foot pads were too soft and easily compressed which allowed the hard slippery plastic on the edge to rest directly on the floor.  This coupled with the fact that the legs tapered outward would cause the legs to splay when someone stood on the stool, thereby unduly increasing the load on the weak and defective plastic that comprised the stool.

13.     Although, the particular stool that Plaintiff was standing on did not contain recycled plastics, it failed because of the same manufacturing, molding and design defects that caused the failure of the stools that did contain recycled plastics, i.e., weak and defective plastics that were full of voids and then overloaded because of the defective skid pad/leg design.

## V.  CAUSES OF ACTION

## COUNT 1: NEGLIGENCE

14.     Defendant Kennedy was negligent in continuing to sell the product after March 9, 2011, when it became aware of the specific defects in the product.  At that point, Kennedy was aware of multiple failures as well as human injuries that were caused by defects that had been specified in the letter of March 9, 2011, from Polymer.

15.     Instead of recalling the product at that time, Kennedy waited over a year before recalling the product.  This was negligence on the part of Kennedy.

16.     This negligence on the part of Kennedy resulted in the injuries to Plaintiff.

## COUNT 2:  BREACH OF WARRANTY

17.     Defendant Kennedy breached the implied and express warranties by marketing a step stool that was unfit for its intended purposes.  Defendant Kennedy's breach of the implied and express warranties proximately caused Plaintiff's damages.

18.     In particular the stool was unfit for its intended purposes of being able to support up to 220 lbs., as Defendant advertised and claimed for the stool.  The reason the product could not support the weight was due to the bad plastics and faulty designs as set specifically set forth in the letter from Polymer (see Ex. A).

## COUNT 4:  STRICT PRODUCTS LIABILITY

19.     At the time the step stool was sold by Defendant Kennedy, the step stool was defective and unsafe for its intended purpose.  The step stool was defective in at least these ways:

   A.    **Material Defects:**  The plastic of the subject stool was weak and brittle due to a manufacturing defect.
   B.    **Molding Defects:**  The plastic stool was full of voids that further weakened the plastic.

    C.     **Thin Walls:**  The walls of the step stool were simply too thin to support the advertised weight limit.

    D.     **Lack of Cross Bracing**:  The stool lacked any sort of bracing, which could have prevented the stools from collapsing.

    E.     **Non-Functioning Skid Pads:**  The rubber pads added to each of the four legs of the stool were soft and easily compressed causing the hard slippery plastic to rest directly on the floor.  The legs were not straight but tapered outward toward the base, and thus when the stool was weighted, the legs would splay outward thereby unduly increasing the load on the weak and defective plastic that comprised the stool.

    F.     **Lack of Warnings**:  There were no warnings that the stool could in fact not support the advertised weight limits.

20.    Even though Defendant Kennedy did not manufacture the product, but instead imported it from a manufacturer in China, Kennedy is still liable for the defective product based upon Tex. Civ. Prac & Rem. Code Sec. 82.003 (a)(7) because the manufacturer of the product is Chinese and not subject to the jurisdiction of this Court.

## COUNT 5:  D.T.P.A.

21.    The acts and/or omissions of Defendant Kennedy constitute violations of §17.46(a) of the Texas Deceptive Trade Practices-Consumer Protection Act.   In particular, Kennedy represented the step stool had characteristics it did not have, in particular, that it could support a weight of up to 220 lbs.   This is a violation of §17.46(a)(5) of the Act.

22.    The foregoing acts were done "knowingly" as Defendant was aware its stool could not support the claimed weight over a year before it stopped selling the product.

23.    The acts and/or omissions of Defendant Kennedy were the producing causes of Plaintiff's damages.

24.    Plaintiff is a consumer within the meaning of the Texas Deceptive Trade Practices-Consumer Protection Act.

25.     Defendant Kennedy was provided with over sixty (60) days written notice of Plaintiff's claims.

26.     As a result of the acts and/or omissions of Defendant Kennedy, Plaintiff has been required to retain attorneys to represent her interests and is entitled to recover reasonable attorney's fees in the preparation and prosecution of this action, as well as a reasonable fee for any and all appeals to other courts.

27.     Plaintiff is and was a "consumer" as that term is defined under the Texas D.T.P.A. Her assets are far below the statutory threshold.

## COUNT 6: *RES IPSA LOQUITOR*

28.     Plaintiff purchased the stool from Marshalls, and always used it for its intended purpose.  Plaintiff made no alterations, or modifications to the stool, and never damaged it.  Based upon information and belief, it was not modified or altered by Marshalls or others after it left the Kennedy International.

29.     Plaintiff weighs far less that the advertised weight limit of the stool.

30.     The stool collapsed when Plaintiff stood on it to clean some cabinets.

31.     The character of the occurrence is such that it would ordinarily not happen in the absence of negligence, and the stool was under the management and control of Defendant at the time that the negligence occurred, *i.e.*, when the stool was manufactured.

## VI.  DAMAGES

32.     Plaintiff Dawnda Durbin seeks damages for the following:

     **A.**    **MEDICAL EXPENSES: Past and Future**

     **B.**    **PHYSICAL PAIN AND SUFFERING: Past and Future**

     **C.**    **MENTAL ANGUISH: Past and Future**

      D.      **PHYSICAL IMPAIRMENT/DISABILITY: Past and Future**

      E.      **LOSS OF WAGE EARNING CAPACITY:  Past and Future**

      F.      **ATTORNEY'S FEES AS ALLOWED UNDER THE DTPA.**

## VII.  RELIEF SOUGHT

33.    Plaintiff requests that this case be tried after which Plaintiff recover:

    (1)    Judgment against Defendant;

    (2)    Pre-judgment and post-judgment interest at the maximum amount allowed by law;

    (3)    Costs of suit; and

    (4)    Such other and further relief to which Plaintiff may be justly entitled.

Respectfully submitted,

**WILLIAM L. SHIRER**
State Bar No. 18273100

**MCGILBERRY & SHIRER, L.L.P.**
5720 LBJ Freeway
Suite 575, LB 5
Dallas, Texas 75240
    P:  (972) 392-1225
    F:  (866-342-1022 Facsimile
    E:  wls@shirerlaw.com

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of this document has been served upon all parties via ECF Pacer on this 5th day of November, 2014.

**WILLIAM L. SHIRER**

# Exhibit A

# Princeton Polymer Laboratories, Inc.

**521 Lehigh Avenue**        **Union, New Jersey 07083**
Telephone (908) 687 – 7033   E-mail: Princetonpolymer@aol.com

March 9, 2011

Mr. Mendel Reich
Comptroller
Kennedy International
Dayton, NJ

Dear Mendy,

You contacted Princeton Polymer Laboratories and brought over several step stools, all having vivid colors, and each one had plastic white dots on the top.

One of the issues that you stated was that some stools failed in the field ( you had some legal problems associated with it), and were desirous of finding out their compositions, and asked our comments on whether the problem is solved/solvable.

Of the several step stools you provided, you identified some that were "good" and some were "bad" (your designation). We marked them together with a magic marker. In addition you also left with us another step stool (pink), that you called "supposedly" good.

We proceeded to break pieces off from all three, and subjected them to various testing regimens.

As is our practice, all samples were taken from the same region (ie, left leg support, middle of top, etc. ) to insure that we are comparing similar samples. We attempted to cut out ASTM dog bones from these parts, to check tensile, elongation and modulus (Young's), but we gave up on the idea, since the samples were molded with different designs, thus we were unable to find two identical pieces from the various lots.

FTIR surface analysis showed no difference among the resins. (Perkin Elmer Paragon 1000 microscope equipped FTIR).

Looking at the locus of fracture, we saw no real difference in the "bad" versus "good" stools, each piece had some poor molding characteristics, voids and black specs. These were checked with a microscope.

At this juncture, we decided to concentrate on the DSC (Differential Scanning Calorimeter). We use a Perkin Elmer DSC 7 with Pyris software.

All samples were subjected to the same regime, heat from RT to 200C (isothermal), at 10 degrees per minute, hold at 200C for one minute, than rapid cool down. The DSC would show different melting temperatures for different resins, with the associated crystallization points.

On February 16th, through the 20th we analyzed both the "good" and the "bad" samples. The "good" samples had some cross supports underneath the top surface. (Charts I and II).

Both stools contained two or more polymers, the predominant ones being Polypropylene (PP) (filled with calcium chloride) and High Density Polyethylene (HDPE). In fact, the "bad" sample had a very high (50%) amount of HDPE with some amounts of recycle. Both the "good" and the "bad" had two (or more) melting peaks, and two distinc crystallization temperatures. All DSC charts are attached. Please note: HDPE has a melting point in the 120-135C range, and PP has a melting range of 160-175C. In addition, the crystallization range (from the cooling curves) also indicates which and purity of the resins.

The "pink" stool that you gave us was also analyzed, and it comprised of a single resin (Polypropylene). However, wall thickness was 25% less than the previous samples. (measured with a micrometer). (Chart III)

You than sent us more chairs also labeled "good" and "bad" (Charts IV and V).

Analysis of these samples, while "cleaner" still showed the presence of two resins, although slightly better molding conditions. A "new" design, with a silicone rubber part on the top showed no difference in the resin composition. (Chart VI).

We also proceeded to look for weak points, and found the top right around the white silicone polka dots was quite thin, thus a stress fracture would likely occur at this juncture.

March 6, four more step stools arrived, all labeled "Virgin". (Cart VII).

We do not know what their designation of "Virgin" is, but we found the stools to be 95÷% Polypropylene and less than 5% HDPE. The crystalyzation peaks also bore this out.

The latest in the saga was a step stool that arrived on the 5th of March. This sample, also labeled "Virgin" and it also contained primarily Polypropylene, with an even smaller portion of HDPE, plus it had the "supporting" crossbars underneath the top. (Chart VIII).

It is our impression, that a resin system that has no recycle is better, sine recycled resins contain too many unknowns. Also elimination of the thin wall thicknesses issue (a problem with the polka dot design) in the new design, is a plus. Further more, having cross braces for extra support for the weight bearing surfaces is a step (pardon the pun), in the right direction. We believe that the step stool with the silicone top, and having cross braces underneath the top surface, is an inherently better design, and should perform much better in its intended use in the field.

Mendy, hope the above is useful to you.

Sincerely,

Peter Wachtel, Ph.D.
President

# Exhibit B



United States
Consumer Product Safety Commission

## Section 15(b) Report

Submission ID   S15-20111107-29784-999999974
Who You Are   Importer
Is Fast Track   No

## General Information

| | |
|---|---|
| Firm Name | kennedy International inc. |
| Street | 19 STULTS ROAD |
| City | DAYTON |
| State / Province | New Jersey |
| Country | United States |
| Zip | 08810 |
| Email Address | MENDY@KENNEDY-INTL.COM |
| Telephone | 609-409-4516x126 |
| Mobile | 917-686-7000 |
| Fax | 609-409-4518 |
| Website | |
| Contact Person | HENRY GUNDI OR MENDY REICH |
| Contact Person Title | PRES/COMPTROLLER |

## Product Detail

| | |
|---|---|
| Product Description | FOLDING STEP STOOL |
| Brand Name | KENNEDY HOME COLLECTION |
| Model Name or Number | 3578-OCEAN,AQUA,SAGE |
| Serial Number | |
| Date Codes | N/A |
| UPC Codes | 633125004174,633125004194,633125004204 |
| Retail Price | $9.99 |
| Certification / Standards Information | |
| Defect / Problem Description | BAD BATCH OF PLASTIC MIXUTRE IN SOME STOOLS |
| When Discovered | 11/7/2011 |
| How Discovered | DURING INVENSTIGATING ISSUES AS THEY CAME TO MY KNOWLEDGE |
| Primary Hazard | Other |
| Secondary Hazard | Other |
| Hazard Description | POSSIBLE CRACK IN PLASTIC. |
| Total Number: | Incidents: 4   Injuries: 2   Deaths: 0 |
| Injury Information | |

## Product Distribution

| | |
|---|---|
| Distribution | Nationwide |
| Total Number of products involved | 3   With Manufacturer: 1   With Distributors: 1   With Retailers: 2   With Consumers: 4 |
| Production / Importation Dates | 11/1/2009 to 5/5/2011 |
| Distribution Dates | 12/1/2009 to 7/1/2011 |
| Was the Product | Yes |

Distributed in
Canada?

Other Information

## Corrective Actions

Corrective Action   WE HAVE FIXED THE MIXTURE CONTENTS IN ORDER TO PRVENT PLASTIC FROM CRACKING
Details

Stopped   Production

Action Date   6/1/2011

U.S. Consumer Product Safety Commission
4330 East West Highway
Bethesda, MD  20814
February ___, 2012

---

**PORTIONS OF**

**FULL REPORT ON BEHALF OF KENNEDY INTERNATIONAL, INC.
CPSC FILE NO.:  RP120083**

**Re: Folding Step Stool; Model 3576-Ocean, Aqua, Sage**


The following information which is part of "Full Report" is being provided by Kennedy International, Inc. ("Kennedy"), in compliance with 16 C.F.R. Part 1115.13(d).  Items 4 and 7 – 14 are being compiled and will sent under separate cover upon completion. The sale off suspected stools has been halted.

1.      Report submitted by:

> Mendy Reich
> Kennedy International, Inc.
> 25 Stults Road
> Dayton, New Jersey  08810
> Telephone:   609-409-4515 x 126
> Fax:            609-409-4518

> cc:   Michael G. Derrick, Esq.
> Shuttleworth Williams, PLLC
> 22 N Front Street, Suite 850
> Memphis, Tennessee  38103
> Telephone:   901-526-7399
> Fax:            901-526-5056


2.      The product was purchased by Kennedy from a Chinese exporter, East Future International Trading Company, Ltd. ("East Future"). East Future contracts to have the product manufactured and then imports/ships the product to Kennedy or directly to Kennedy's retail customers. The product's manufacturer for East Future International Trading Company was Ningbo Tianqi Plastic Factory.

> East Future International Trading Company, Ltd.
> 1012 Room, Wanjin Building
> 892 Baizahn East Road
> Ningbo City, Zhejiang Province
> China
> Telephone:  86(574)27850-889

> Ningbo Tianqui Plastic Factory
> Jinjia Village
> Longshan Town
> Ningbo, China 315800

U.S. Consumer Product Safety Commission
Full Report
Page 2

3.  Product Description:     Folding Step Stool
    Retail Price:             $7.99 and $9.99
    Brand Name:               Kennedy Home Collection
    Model Name/Number:        3576-
                              Ocean,Aqua,Sage,Blue,Emerald,Lime,Sapphire,3575-
                              Aqua, Lime, Sage,Blue,Sapphire

    Date Codes:               N/A
    UPC Codes:                633125004174, 533125004194,
                              633125004204,633125004136,633125004662,6331250
                              06000,633125004860,633125004877,633125004167,63
                              3125005959,633125006062,633125006079,633125004
                              907,633125006116
    Production Dates:         11/1/2009 to 12/15/2011

    The products do not contain separate, individual or distinct serial numbers unique to
    each stool. Stools are shipped in bulk and identified by description in the purchase
    orders and invoices.  Stools shipped directly to retail customers may also have that
    particular customer's label affixed to the stool in China before shipping by East Future or
    Ningbo Tianqi.

    **"PROVIDE a picture and sample of the product including all packaging."**
    **(Samples previously sent to CPSC)**

4.  Nature of Defect/Problem:  Recycled batch of plastic mixture used during manufacturing
    process, causing a potential decrease of strength and/or cracking in some products
    (primarily blue and green mixtures).

    **"PROVIDE copies of all technical drawings, test results, schematics or
    diagrams, blueprints, catalogs, or other graphic depictions of the products."**

5.  The bad mixture of plastic can cause the stool to crack

6.  Potential defect was discovered on or about Summer and Fall 2011, during the course of
    investigation.

    **"If any complaints relating to the safety of the product or any allegations or reports**

U.S. Consumer Product Safety Commission
Full Report
Page 3

of injuries associated with the product have been received, copies of such complaints or reports (or a summary) shall be attached. Give a chronological account of facts or events leading to the report under Section 15(b) of the CPSA, beginning with receipt of the first information which ultimately led to the report. Also include an analysis of these facts or events if available. Even if no defect, non-compliance or risk is acknowledged provide copies of all claims (including warranty claims and reports for distributors, retailers, and service centers) and court complaints in which it is alleged that the subject product may have malfunctioned, may be defective, may fail to comply with applicable standards, may present a risk or injury, and/or may have caused or contributed to person injury or death. If copies of consumer complaints or other documents requested above are not available, indicate the reason why and provide a summary."

    (Attachment C.)

7.     An itemization detailing the total number of products and units involved is attached to this Report as Recall by customer and units sold.

8.     The products and units were manufactured between 11/1/2009 to 12/15/2011 and distributed between 12/1/2009 to 12/31/2011.

9.     The number of products and units in possession of the manufacturer, importer, private labelers, distributors, retailers, and consumers are listed in **Attachment D;** see also attached Inventory List **(Attachment E).**

10.     Manufacture and stool production associated with this plastic mixture was stopped on Dec 31, 2011 and sale of the stool has currently been halted. Further, in addition to current product inspections coordinated by East Future and/or Ningbo Tianqi Plastic through SGS Testing Labs, Kennedy has taken additional corrective measures to now have a second testing lab (InterTec) inspect the stools. Kennedy has also ordered an analysis of the plastic material and stool construction by Princeton Polymer Laboratories, located in New Jersey. Kennedy is currently awaiting the results of that analysis. Going forward, the stool will likely be manufactured in a new facility.

11.     **"Information that has been or will be given to purchasers concerning the defect, non-compliance or risk with a description of how this information has been or will be communicated. (This shall include draft letters, press releases, warning labels, posters, or other information.)"**

U.S. Consumer Product Safety Commission
Full Report
Page 4

12.    "Details of and schedule for any contemplated refund, replacement, or repair
       actions, including plans for disposing of returned products."

13.    "Detailed explanation and description of the marketing and distribution of the
       product from the manufacturer (or importer) to the consumer."

14.    "The names and addresses of all distributors, retailers, and consumers."

# Exhibit C

# Kennedy International, Inc.

23 Stults Road • Dayton, NJ 08810 • Phone: 609.409.4515 • Fax: 609.409.4518

Kennedy International Inc
25 Stults Rd.
Dayton NJ, 08810                                    November 8, 2011

To whomever it may concern,

We have been distributing folding step stools that are manufactured in China since 2005

There have been three claims of the step stool collapsing since we started importing the stool. The three claims are

Claim#1 August 17, 2010 a 13 inch stepstool blue color cracked. They claim it broke while she was standing on it.
Claim#2 February 6th 2011 a 13 inch stepstool green color cracked They claim it broke while she was standing on it.
Claim#3 claimant stepped on a 9 inch stepstool in a TJ Maxx store in January 2011 when supposedly it cracked.

Kennedy international has since investigated the issue and found that there was a certain batch of the plastic mixture which could which had some p.e materials in it which might. This mixture only applied for the colors green and Blue.
As of June 2011 a process was put in place to make sure that all the goods were manufactured with the good quality plastic.
Additionally we have taken the following steps as well to insure the safety of our customers.
1. Improved plastic mixture not to have any P.E in it.
2. Increased the ribs on top of stool to make it sturdier.
3. Added extra caution labels to all stools going forward
4. Lowered the weight capacity on the stool label as an added precaution.
5. All containers going forward for these items will be inspected 1 by 1 by a reputable company such as intertek.

Mendy Reich
Comptroller
Kennedy International Inc

# Exhibit D

## Monthly Progress Report for Corrective Action Plan & Incident Update

CASE #: RP120083      ~~Final~~

Compliance Officer: Eric T. Gray

Company Name: Kennedy International, Inc.

Product: folding step stool

Reporting Dates, From: 4/11/13 To: 7/10/13      Total# of Affected Products: 1.5 Million

### I) PRODUCTS CORRECTED/CAPTURED BY YOUR FIRM:

| Location of Products | Total Products | Corrections This Period | Total Corrections | Percent Corrected |
|---|---|---|---|---|
| With Manufacturer | | | | |
| With Distributor | 1,048 | 0 | | 64% |
| With Retailers | 8,107 | · | 7,133 | 89% |
| With Consumers | 4,542 | · | 655 | 14% |
| TOTAL: | 14,589 | · | 9,596 | 75% |

### II) Incident Update:

(Using the categories listed below, report the number of actual incidents/injuries/deaths that occurred *prior* to or *after* the CAP date indicated during the reporting period. Update this information monthly. Don't report the date of your receipt of the information but when it occurred. For any newly reported information, provide consumer contact information for all incidents (pre and post recall) with this report.)

| | # Occurred Prior to 05/10/2012 | Total | # Occurred After 05/10/2012 | Total |
|---|---|---|---|---|
| # Incidents | 61 | 61 | 2 | 3 |
| # Injuries | 4 | 4 | | |
| # Deaths | | | | |

### III) NOTIFICATION MEASURES:

(Using the categories listed below, records the numbers of notifications attempted by your firm during this reporting period, and records the total number of notifications to date.)

| | Number for This Reporting Period | Total |
|---|---|---|
| Billing Insert | | |
| Direct Mail Letter | | |
| Magazine | | |
| Newspaper | | |
| Pediatrician Poster | | |
| Phone Call | | |
| Product Catalog | | |
| Radio | | |
| Retail Store Poster | | |
| Television | | |
| Web Site | | |
| Post Office | | |
| Thrift Store | | |
| Other | | |

### IV) CONSUMER AWARENESS:

(Using the categories below, record the way, by numerical quantity, Consumers told you they learned of the corrective action, i.e. consumer received direct mail, read magazine, etc.)

| | Number for This Reporting Period | Total |
|---|---|---|
| Billing Insert | | |
| Direct Mail Letter | | |
| Magazine | | |
| Newspaper | | |
| Pediatrician Poster | | |
| Phone Call | | |
| Product Catalog | | |
| Radio | | |
| Retail Store Poster | | |
| Television | | |
| Web Site | | |
| Post Office | | |
| Thrift Store | | |
| Other | | |

### V) Calls to 800 Number/Correspondence

| | # From Customers This Reporting Period | Total |
|---|---|---|
| 800 Number | 25 | 5,631 |
| E-mail | | |
| Written Requests | | |

NOTE: Submit completed form by the FIRST of EACH MONTH to Judy Smith, Recall Coordinator, at:
United States Consumer Product Safety Commission, Office of Compliance
4330 East West Highway, Room 613 Bethesda, MD 20814
OR, fax report to (301) 504-0359 or e-mail to jsmith@cpsc.gov. Address any questions to Ms. Smith at 301- 504-7525

Revised 4/07

~~Final~~